A05A0946. IN RE ESTATE OF THORNTON.
(620 SE2d 410)

MILLER, Judge.

The children of Barbara Jean Thornton from a previous marriage sued their stepfather Wilburn K. Thornton for mismanagement of their mother's estate after he transferred the home where the couple had lived to himself. The trial court ruled that although the stepfather, now also deceased, had indeed mismanaged the mother's estate, the stepfather's heirs were nonetheless entitled to a purchase money resulting trust in the homeplace. Since no such trust was created, we affirm in part, reverse in part, and remand to the superior court on the question of damages.

The facts in this case are not in dispute. In 1980, Wilburn K. Thornton purchased a residence and placed it in his wife Barbara's name. In 1996, the couple sold this property and, using both the proceeds and additional funds, bought a new house in Villa Rica. This property too was placed in Barbara Thornton's name. After she died intestate in October 1998, her children from a previous marriage and the guardian ad litem of her child with Wilburn Thornton agreed to appoint him administrator of her estate. The probate court made the appointment in December 1998. Soon afterward, Mr. Thornton conveyed the property from the estate to himself.

In 1999, Barbara Thornton's children from a previous marriage removed some personal property from the house and filed a claim for mismanagement of the estate, alleging that their stepfather's conveyance of the homeplace from the estate to himself was wrongful. Mr. Thornton died in August 2002, before this claim was adjudicated. After one of Mrs. Thornton's children from her previous marriage was appointed as administrator of her estate, the children's claim came before the probate court, which found that the estate had indeed been mismanaged, but noted that only the superior court had jurisdiction to award damages for this mismanagement. Mr. Thornton's heirs appealed to the superior court, which held that (1) Mr. Thornton had mismanaged the estate; and (2) Mr. Thornton's heirs had a right nonetheless to an undivided one-half interest in the homeplace arising from "a purchase money resulting trust," presumably as a result of his 1996 transfer of title to Mrs. Thornton. Mrs. Thornton's heirs now appeal from the superior court's order.

We will not set aside the probate court's findings of fact unless they are clearly erroneous. *Delbello v. Bilyeu*, 274 Ga. 776, 777 (1) (560 SE2d 3) (2002). We will set aside conclusions of law, however, if we find that either the probate court or the superior court made a plain legal error. *Page v. Braddy*, 255 Ga. App. 124, 126 (564 SE2d 538) (2002).

1. Mrs. Thornton's heirs first argue that the superior court exceeded its jurisdiction when it held that Mr. Thornton's heirs were entitled to a purchase money resulting trust in the property. See, e.g., *Payne v. Payne*, 229 Ga. 822, 824 (1) (194 SE2d 458) (1972) (on appeal from probate court, superior court's jurisdiction limited to merits of issues raised below). We disagree.

Although it is true that questions of subject matter jurisdiction can be raised at any time, this appeal is the first occasion on which Mrs. Thornton's heirs have suggested that the subject matter of this suit does not include the question of the ownership of the homeplace. The probate court made a finding of fact on just this issue when it noted that "Mr. Thornton, while the personal representative of the estate, had transferred the [marital] property, more [specifically] the

residence[,] to himself individually." Mr. Thornton was therefore entitled to raise the question whether the homeplace came into his hands as the personal representative of the estate in the course of asserting the defense that he had in fact administered the estate properly. See OCGA § 53-7-10 (b) (3)-(5) (specifying defenses available to personal representative).

This does not mean that Mr. Thornton was bound to prevail on the issue, however. In his petition for appointment as trustee, Mr. Thornton valued the property at $230,000, while his later accounting set the value at only $180,000. The only licensed real estate appraiser to examine the property valued it at under $160,000. The probate court thus had evidence to support its conclusion that Mr. Thornton "was inaccurate as to values of certain items and ownership of certain items," and that this and other problems amounted to mismanagement of his wife's estate.

Since the probate court included the issue of Mr. Thornton's 1996 transfer of the property in its findings of fact and conclusions of law, and since the issue was also relevant to Mr. Thornton's defense to the claim of mismanagement, the superior court did not exceed its jurisdiction when it both affirmed the probate court's finding of mismanagement and ruled on the status of the homeplace. See *Batten v. Batten*, 182 Ga. App. 442, 443 (2) (356 SE2d 228) (1987) (superior court erred in striking new portion of amended caveat where that portion concerned subjects properly before probate court).

2. The only remaining issue is whether the superior court erred in holding that a purchase money resulting trust was created when Mr. Thornton placed the homeplace in his wife's name. We find that this holding was indeed in error.

As the Supreme Court of Georgia has recently repeated,

> to prove [a] claim that the conveyance of [a] marital home to [a spouse] gave rise to a resulting trust, [the paying spouse] must overcome the presumption under Georgia law that the conveyance was a gift. To rebut the presumption, [the paying spouse is] required to prove by clear and convincing evidence, inter alia, that a resulting trust was contemplated by both parties by way of an understanding or agreement.

(Citations omitted.) *Brock v. Brock*, 279 Ga. 119, 119-120 (1) (610 SE2d 29) (2005); see also OCGA § 53-12-92 (c) (when payor and transferee are husband and wife, presumption of gift is rebuttable only by clear and convincing evidence).

There is no evidence here that Mrs. Thornton intended to create or otherwise agreed to the imposition of a resulting trust concerning the homeplace when it was conveyed to her in 1996. Thus Mr.

Thornton's heirs have failed to rebut the presumption that the property was a gift from her husband, and the trial court erred in finding that Mrs. Thornton held any portion of the homeplace in trust for Mr. Thornton. See *Brock*, supra, 279 Ga. at 120 (1) (reversing trial court's finding of resulting trust in absence of evidence suggesting spouses' agreement to that effect).

Under Georgia intestacy rules, Mr. Thornton inherited only a one-third interest in the homeplace at Mrs. Thornton's death, with her children from her previous marriage dividing the remaining two-thirds between themselves. See OCGA § 53-2-1 (b) (1) (surviving spouse shares equally with children of decedent, but takes no less than one-third share). We therefore reverse that portion of the superior court's order granting Mr. Thornton's heirs an undivided one-half interest in the property and remand to the superior court for a determination of the damages to be awarded consistent with the distribution of interest in the homeplace under the intestacy statute.

*Judgment affirmed in part, reversed in part and case remanded with direction. Blackburn, P. J., and Bernes, J., concur.*

DECIDED AUGUST 8, 2005 —
RECONSIDERATION DENIED AUGUST 24, 2005.

*Smith, Wallis & Scott, James W. Wallis, Jr.*, for appellant.
*George G. Shadrix*, for appellee.